

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**MARLITA E. POLLARD**                                                  **PLAINTIFF**

**VERSUS**                                CIVIL ACTION NO. 3:13CV324DPJ-FKB

**HINDS COUNTY DEPARTMENT OF HUMAN SERVICES**
**MICHAEL W. MILLER**
**JOHN DOES 1-10**                                                   **DEFENDANTS**

## COMPLAINT

### JURY TRIAL DEMANDED

COMES NOW Plaintiff, Marlita E. Pollard, and brings this action to recover damages against Defendants for sexual harassment, sexual discrimination, a sexually hostile work environment, and retaliation. Claims are also made against John Does 1-10, who are supervisory officials within the Hinds County Department of Human Services, but whose true identity can only be known after discovery is conducted. This action is to recover actual damages to include denied future wages, back pay, compensatory damages, punitive damage, and attorney fees. The actions of the Defendants constitute violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, *et seq.* and 42 U.S.C. Section 1983, and the Fourteenth Amendment and other provisions of the United States Constitution.

### THE PARTIES

1.      Plaintiff, Marlita E. Pollard, is an adult female resident citizen of Hinds, County, Mississippi who resides at 2605 Belvedere Drive, Apt. 304, Jackson, MS 39121.

2.      Defendant, Hinds County Department of Human Services, is a state agency and may be served with process through its County Director, Michael W. Miller, at 4777 Medgar Evers Boulevard, Jackson, MS 39213.

3. Defendant, Michael W. Miller, serves as County Director of the Hinds County Department of Human Services and is an individual who may be served at 4777 Medgar Evers Boulevard, Jackson, MS 39213.

4. Defendant, John Does 1-10, are individuals who also served in a supervisory capacity at the Hinds County Department of Human Services or in an oversight supervisory capacity of the Hinds County Department of Human Services. The individuals' identities are not known at this time. Plaintiff will timely supplement the names of these parties upon discovery.

## JURISDICTION

5. At all relevant times, all Defendants acted under color of state law. This action arises under Title VII, 42 U.S.C. Section 2000e, *et seq.*, 42 U.S.C. Section 1983, and the United States Constitution.

6. This Court has federal question jurisdiction and venue is proper to 42 U.S.C Section 2000e-5(f)(3). A true and correct copy of the EEOC Determination is attached hereto as Exhibit "A". A true and correct copy of EEOC's referral to the U.S. Department of Justice Civil Right Division is attached hereto as Exhibit "B". A true and correct copy of the U.S. Department of Justice Civil Rights Division Notice of Right to Sue is attached hereto as Exhibit "C".

## STATEMENT OF FACTS

7. In August 2009, Plaintiff, an unemployed and single mother of two, learned of the TANF Work Program offered by the Hinds County Department of Human Services, Hinds County, Mississippi.

8. This Hinds County Department of Human Services TANF work program was designed to help welfare recipients and/or those in desperate need of work with training, sometimes resulting in those trainees being hired directly by the Department of Human Services.

9. This Hinds County Department of Human Services work program required you to "volunteer" for three months before one could be eligible for hire by the Department of Human Services.

10. In September 2009, Plaintiff enrolled as a volunteer for this Department of Human Services work program and was determined to obtain a job to support her daughters.

11. Upon enrollment, Plaintiff was told by both instructors that Director Michael W. Miller, Defendant, would hand-pick students with good work potential from the class to work for the Department of Human Services, and one needed to be "dedicated and show that they wanted the job".

12. Plaintiff met Defendant Michael W. Miller approximately two days after volunteering for the Department of Human Services work program.

13. Plaintiff was required to volunteer for three months without pay for all work related projects in this work program to show dedication and desire for a permanent position.

14. After meeting Plaintiff, the Defendant Michael W. Miller continually sat beside Plaintiff and flirted with Plaintiff by putting his arm around Plaintiff's shoulders, asking Plaintiff to cook for him, and made comments about Plaintiff being his wife or woman.

15. Plaintiff received many unwanted and uninvited sexual advances and touchings by Defendant Michael W. Miller because Plaintiff was told that she must "show that she wanted the job"; and Defendant Michael W. Miller was the person who would hire Plaintiff.

16. During the next three months, Defendant Michael W. Miller continued his unwanted and uninvited sexual advances, but also instructed Plaintiff on how to wear her hair and what jewelry to wear.

17.     In November 2009 Defendant Michael W. Miller ordered Plaintiff to the Job Readiness Area Office. Upon Plaintiff entering, Defendant Michael W. Miller closed the door, locked it, grabbed Plaintiff's hand, sat in a chair and pulled Plaintiff in his lap and said he wanted to play Santa Claus.

18.     Plaintiff declined and attempted to pull her hand from Defendant Michael W. Miller. Defendant Michael W. Miller continually held Plaintiff's hand. Plaintiff again resisted and Defendant Michael W. Miller asked what Plaintiff wanted for Christmas. Plaintiff responded she wanted to be able to take care of her children, provide them with a Christmas, and to get a job. Defendant Michael W. Miller told Plaintiff that he would see what he could do, and released Plaintiff to leave.

19.     On December 1, 2009 Plaintiff received the paying job she sought from Defendant Michael W. Miller and the Hinds County Department of Human Services.

20.     Immediately following Plaintiff's hire, Defendant Michael W. Miller, on an almost daily basis, started to sexually harass Plaintiff. Defendant Michael W. Miller told Plaintiff how he wanted Plaintiff to wear her hair, jewelry, and clothes. Another supervisor told Plaintiff that she needed to do whatever Defendant Michael W. Miller asked, or Plaintiff would lose her job.

21.     On almost a daily basis since December 2001, Defendant Michael W. Miller approached Plaintiff and made unwanted stares and touches to Plaintiff's body, particularly her breasts, followed with unwanted sexual suggestions and comments. Plaintiff repeatedly asked Defendant Michael W. Miller to stop.

22.     On one occasion, Defendant Michael W. Miller approached Plaintiff from behind, and ran his finger down the back of Plaintiff's pants. Plaintiff screamed and jumped away. Defendant Michael W. Miller stated her pant's tag was hanging out and he was just tucking it in. Plaintiff was so visibly upset, she went home and cut out the tags to all of her pants.

23. Plaintiff approached some senior co-workers to complain about Defendant Michael W. Miller. These employees told Plaintiff that she would lose her job if she complained to any supervisors.

24. Plaintiff became constantly stressed and ill over the constant sexual harassment by Defendant Michael W. Miller. Plaintiff tried to leave the office whenever allowed to avoid the unwanted sexual advances by Defendant Michael W. Miller.

25. Plaintiff's stress and illness from the sexual harassment caused her to miss work. Her immediate supervisor, Daisy Bates, confronted her about the absences, and Plaintiff reported the unwanted sexual advances by Defendant Michael W. Miller to her.

26. Plaintiff felt relieved she had reported Defendant Michael W. Miller and felt the sexual harassment would then stop. However in April 2010, Defendant Michael W. Miller approached Plaintiff from behind and brushed her butt. Defendant Michael W. Miller then told Plaintiff that if she wanted to keep her job, that she had to show him what the job meant to her.

27. In June 2010, Defendant Michael W. Miller approached Plaintiff's desk and knelt down. Defendant Michael W. Miller showed Plaintiff a naked picture of a girl who Defendant Michael W. Miller thought resembled the Plaintiff. Defendant Michael W. Miller asked Plaintiff if she had any naked pictures of herself and wanted Plaintiff to provide Defendant Michael W. Miller with them. Defendant Michael W. Miller then told Plaintiff that he wanted to have sexual intercourse with Plaintiff.

28. For the remainder of June 2010, Defendant Michael W. Miller continued on a daily basis asking for nude photos, grabbing, groping, touching, and making unwanted sexual advances to Plaintiff.

29. In August 2010, Plaintiff wore a long dress to work and was late arriving for work. Plaintiff ascended the stairs to work and met Defendant Michael W. Miller. Defendant Michael W. Miller asked Plaintiff if she had any panties on under her

dress. Plaintiff was outraged and decided she could take no more of this sexual harassment even if it meant losing her job.

30. Plaintiff reported everything to Assistant County Director Debra Evans who made a report. Assistant County Director Evans asked Plaintiff how Plaintiff could prove these allegations. Plaintiff informed Evans stated she would record the conversation on her cell phone with Defendant Michael W. Miller to prove it.

31. Two days later while in the file room at work, Plaintiff was approached again from behind by Defendant Michael W. Miller. Defendant Michael W. Miller hugged Plaintiff from behind. Plaintiff pushed Defendant Michael W. Miller away. Plaintiff recalled Defendant Michael Miller stating these words: "I am the HNIC...the head nigger in charge....can't nobody do nothing to me.....you don't think people have tried to get me out of here and tell on me before....my feet are planted.....I'm untouchable....I don't get in trouble." Defendant Michael W. Miller then stuck two fingers down Plaintiff's shirt and rubbed Plaintiff's breasts.

32. Two days later on October 1, 2010, Defendant Michael W. Miller called a meeting for renewal of employment contracts to include Plaintiff's contract. Assistant Director Debra Evans was present as were four other employees. Defendant Michael W. Miller was visibly upset, stated he knew employees were trying to record him with their phones, and threatened to fire everyone.

33. Following the meeting, the unwanted sexual advances decreased by Defendant Michael W. Miller because Plaintiff was moved to another office downstairs by Debra Evans' office. Plaintiff's assistants to her work were removed. Plaintiff's workload increased dramatically.

34. Plaintiff was not physically able to address her new workload and knew she was about to be terminated. In October 2010, Plaintiff contacted Mark Smith at EEOC and reported her mistreatment.

35. On November 18, 2010, Plaintiff was terminated from employment with the Hinds County Department of Human Services.

36.     Plaintiff again contacted the EEOC regarding her dismissal.

37.     After conducting an investigation, the EEOC issued a final determination on January 19, 2012.  EEOC's Determination revealed "it is reasonable to believe the Charging Party (Plaintiff) and other females were subjected to a sexually hostile work environment and discharged in retaliation for opposition and participation in an internal investigation in violation of Title VII".  Informal methods of conciliation by the EEOC followed, but were unsuccessful.

38.     On February 2, 2012 the EEOC forwarded their findings and their Determination letter to the United States Department of Justice Civil Rights Division for Review.

39.     On March 2, 2013 the United States Department of Justice Civil Rights Division issued a Notice of Right To Sue which was received on March 7, 2013.

### Liability of John Does 1-10

40.     At least since 2003, Defendants John Does 1-10 who served in a supervisory capacity at the Hind County Department of Human Services had actual knowledge of Defendant Michael W. Miller's propensity for sexual harassment, a hostile work environment, and subsequent retaliation toward volunteer workers and to those hired by Defendant Michael W. Miller.  Defendants John Does 1-10 who served in this supervisory capacity knew Defendant Michael W. Miller posed a risk to the safety of these volunteers and newly hired employees.

41.     Defendants John Does 1-10 would have known of the numerous aggrieved parties who worked as volunteers or as full time employees who were subjected to the sexual harassment and a hostile work environment and their particular instances while employed at the Hinds County Department of Human Services:

    A.     JoLynn Jackson

        Jackson recently retired after 29 years of service.  Jackson observed sexual harassment to Plaintiff and other employees and reported Defendant

Michael W. Miller. As a result, Jackson was mistreated, not promoted, and moved to another office.

B.     Marsha Calhoun

During her tenure, she experienced constant sexual harassment and advances by Defendant Michael W. Miller and was fired when she reported it.

C.     Teresa Ball

During her tenure, she was constantly the victim of sexual advances and harassment by Defendant Michael W. Miller to the knowledge of other supervisors.

D.     Maggie Sulton

Sulton witnessed Defendant Michael W. Miller sexually harass numerous employees and was subjected to a hostile work environment. Sulton was terminated when she reported this to supervisors.

E.     Rinski Gilmore-Marshall

Gilmore-Marshall was aware of Defendant Michael W. Miller's sexual advances to numerous employees and was subjected to a hostile work environment. Gilmore-Marshall was terminated when she reported it.

F.     Roshunda Harrien

Harrien witnessed the sexual harassment by Defendant Michael W. Miller to Plaintiff and reported it. Harrien was then terminated.

G.     Stephanie Bolin

Bolin had her underwear tugged by Defendant Michael W. Miller and paper thrown between her breasts by Defendant Michael W. Miller. Bolin reported this information and then quit her job because of the humiliation.

H. <u>Demetria Gray Abdul Haqq</u>

Haqq was the victim of constant sexual misconduct and harassment by Defendant Michael W. Miller. Haqq reported this sexual harassment and left her employment because of the humiliation caused to her.

I. <u>Marjorie Purnell</u>

Purnell witnessed the sexual harassment and experienced the hostile work place of Defendant Michael W. Miller. Miller confided in Purnell that he would create false reports to terminate employees. Purnell retired because of the pressure.

J. <u>Natasha Evans Taylor</u>

Taylor witnessed the sexual harassment and advances to Plaintiff and reported it. Taylor was terminated as a result.

K. <u>Angela Kirkland</u>

Kirkland witnessed the sexual harassment to Plaintiff and other employees by Defendant Michael W. Miller. Kirkland was fired for reporting this to superiors.

L. <u>Merry Dampeer</u>

Dampeer started employment in 2003 and was the victim of sexual attacks and sexual misconduct by Defendant Michael W. Miller. Dampeer resisted and was moved to another location. Dampeer quit her employment because of the hostile work environment.

M. <u>Angela L. Moore</u>

Moore was terminated because Defendant Michael W. Miller told her to not talk any more with JoLynn Jackson. This was subsequent to JoLynn Jackson reporting Defendant Michael W. Miller for sexual harassment.

Respectfully submitted,

Marlita E. Pollard, PLAINTIFF

By: /s/ Philip H. Neilson
Philip H. Neilson (MB# 3798)
Attorney at Law
P.O. Box 1860
Oxford MS 38655
(662) 832-8070


Bonnie Bridgers Smith
Attorney at Law
4500 I-55 North Ste. 253
Jackson, MS  39211-5966